SUTRO and another *v.* MOLL.

*(Circuit Court, S. D. New York.* February 18, 1881.)

1. LETTERS PATENT—IMPROVEMENT IN CORDS FOR WRAPPING THREAD.

   Reissued letters patent No. 6,751, granted November 16, 1875, to Hugo Sutro, for an improvement in cords for wrapping thread, are not infringed by the device of August Moll.

2. SAME—EXTENT OF THE PATENT.

   In view of arrangements already in use, the reissue must be limited to covering sections strictly attached and requiring cutting to detach them.

*J. P. Fitch,* for plaintiff.

*S. Greenbaum,* for defendant.

BLATCHFORD, C. J.    This suit is brought on reissued letters patent No. 6,751, granted to Hugo Sutro, November 16, 1875, for an "improvement in cords for wrapping thread," the original patent, No. 130,672, having been granted to him August 20, 1872, and reissued to him, as No. 5,725, January 6, 1874.    The following is the specification of reissue No. 6,751, including what is outside of brackets and what is inside of brackets, and omitting what is in *italics:*

"This invention relates to a new form for holding [and a new method of putting up] braided or other threads, and [it] consists in [pasteboard, card, or other equivalent material, notched] *notching a card* at the ends [so as] to produce visible and accurate subdivisions of the skeins wound thereon; [and also in perforating or equivalently weakening or cutting such card lengthwise to allow convenient separation of any one or more of the sections of card with the thread or skein upon it.]    This is for the purpose of keeping the skeins so fully separated that they cannot become entangled, and that they can—each skein containing a certain length of thread—be [separated] *cut apart* with their sections of card, [so as] to furnish a desired measure of thread or braid.    A, in the drawing, represents the card [or form] around which the braided or plain thread, cord, or tape is wound lengthwise.    The ends of this card are notched, as at *a·a,* in figure 1, there being as many notches as there are to be skeins or separate subdivisions wound about the card.    In this manner the card is subdivided into a series of narrow sections, *b b,* [each] *all* containing [a certain] *equal* [quantity] *quantities* of the fabric, the projecting prongs, *d d,* between the recesses, *a,* keeping the several skeins properly separated.    The card may be perforated [or otherwise equivalently weakened or cut] lengthwise [along a line or lines, indicated by the broken line or lines in figure 1 of the drawings, so as] to allow convenient [separation] *detachment* of any one or more of the [skeins with their sections of card, *b,*] *sections, b, with the cord on it,* so that, *in retail trade,* the skeins can be disposed of separately without requiring their unwinding and special measurement.    The [fabric is] *skeins on the card may be* wound [in skeins of the desired length] upon [each of] the sections, *b,* [of the card, as described, and all or a part of the skeins remain connected together] so as to constitute [an

unbroken length] *one continuous thread, cord, or tape,* or [else the skeins upon the card that is simply perforated, or otherwise equivalently weakened between the said sections, may be disconnected, so as to form] *they may be* independent [and] *of each other; i. e.,* separate pieces [of the fabric upon] *on* the several sections, *b.* Thus put up, *on any pattern card,* the fabric, which may consist [in] *of* woven, braided, or twisted cord, tape, ribbon, braid, *or* thread, [wire, or any other narrow articles measured by the yard,] cannot tangle [twist or] *nor* soil, *neither in the hands of the actual consumer, merchant, or manufacturer.* Under the old style of putting up such goods they were very apt to become entangled, and, as they had to be separately measured in dealing out certain lengths, [they] *their delicate tints* were often soiled [and] *or they were* twisted out of shape."

Reading in the foregoing what is outside of brackets and what is in italics, and omitting what is inside of brackets, we have the specification of the original patent. The claims of the reissue are as follows:

"(1) The device for holding thread, consisting of card-board notched at the ends, so as to separate said threads into two or more sections, or skeins, as set forth; (2) the device for holding thread, consisting of card-board, notched at the ends, and perforated lengthwise, so as to be formed into sections, to allow of convenient separation of the sections and skeins of thread, as and for the purpose set forth; (3) the improved method described of putting up thread, or any narrow fabric, in skeins, on card-board notched at the ends, by winding the fabric continuously from one notched section of the card-board to another, as and for the purpose set forth."

The original patent had only one claim, as follows:

"The device for holding thread, formed of a card, A, notched at the ends, so as to be formed into sections, *b b,* as set forth."

The putting up of the skeins by winding the fabric continuously from one section to another is found in the original specification. So, also, is the perforation of the card lengthwise. But the original does not suggest that the sections can be other than parts of the same continuous card, attached together only because and as parts of the same unit, and requiring detachment by the cutting or physical severing of the body of such unit in order to become sections. The reissue omits the cutting apart and detaching, and the expression "a card."

The defendant's arrangement, which is alleged to infringe, consists of detached pieces of notched card-board, with the fabric wound continuously from one to another, and then the pieces laid side by side, and two pieces of loose card-board laid crosswise of the first-named pieces between their upper faces and the lower sides of the wound fabric, so that the whole is capable of being taken up and moved

together, by taking hold of any part of it, as the patented structure can be. The result is attained of separating the threads into more skeins than one, and of allowing of the convenient separation of the skeins, and there is the continuous winding. But there is nothing which can be called "a card" in the sense of the plaintiffs' card, and in the sense of the description in the original specification, nor are there any sections of a card.

It is shown by the testimony of McCauley that it was old to put up cord by winding a given length on a notched piece of board, and then continuing the cord to another notched piece of board, and winding an equal length of the cord on that, and so on to the number of a dozen; and that he had known of this being done for at least 20 years in New York, with Butler & Pitkin, 356 Broadway, who subsequently became Butler, Pitkin & Co., 476 Broadway. It is shown by the testimony of John E. Read, a member of the firm of Howard, Sanger & Co., of New York, dealers in fancy goods, and who has been in that business for 28 years continuously, that for over 20 years past he has known of fishing lines put up on notched boards and continued from one board to another. The testimony of these two witnesses was objected to on the record as "not within the pleadings." What this was intended to mean is not further stated in the record. It is too indefinite to be regarded. In argument it is contended that the testimony of McCauley and that of Read are inadmissible, because knowledge by them is not set up in the answer. But the answer sets up that the patented invention was before known by Edwin T. Butler, of "Butler & Pitkin, in business at No. 356 Broadway, New York city," and by "Howard & Sanger, in business at No. —— Broadway, New York city;" and that the patented method of having one continuous thread in skeins of two and more, substantially as described in the reissue, was known to the following persons, and at the following times and places, to-wit: "Butler, Pitkin & Co., 356 Broadway, New York city, more than 10 years past; Howard, Sanger & Co., 462 Broadway, New York city, more than 10 years past."

The statute (Rev. St. § 4920) does not require the names of witnesses to be given, but only the names of those who knew of the thing, and where they can be found, and where and by whom the thing was used. Aside from the want of point in the objection stated on the record, the notice in the answer was sufficient to admit the testimony of the two witnesses. The testimony of McCauley was also objected to, on the record, as immaterial; and that of Read as irrelevant. The testimony was material and relevant as tending to show that the

defendant's structure existed before the patented invention, and therefore that the defendant's structure was not the same as the plaintiffs'. In this view no notice in the answer was necessary as to names, as the testimony was admissible under the issue of non-infringement.

Nothing is shown to invalidate the plaintiff's reissue, properly construed; but, in view of the original patent, the reissue cannot be so construed as to cover the defendant's device. Moreover, the existence of the devices testified to by McCauley and Read requires that the reissue shall be limited to covering sections strictly attached and requiring cutting to detach them; and, in view of such limitation, the defendant has done no more than was done before. Putting in the cross-pieces to keep the detached pieces in position is not within the patented invention.

The bill is dismissed, with costs.